UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| H&B VENTURES, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-00438-MTS |
| | ) | |
| STATE AUTO PROPERTY AND | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Before the Court is a Motion to Remand by Plaintiffs H&B Ventures, LLC and Gene Bentrup (collectively, "Plaintiffs"). Doc. [12]. Plaintiffs originally filed their action in the Circuit Court for the City of St. Louis, Missouri against Defendants State Auto Property and Casualty Insurance Company ("State Auto") and Hamza Daghamin. Doc [4]. State Auto removed this case by invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332(a). Doc. [1]. Plaintiffs move to remand the case to state court arguing State Auto's removal is untimely, as more than one year has passed since commencement of the action. Doc. [12]. For the reasons that follow, the Court grants Plaintiff's Motion and remands the action to state court.

I.    **BACKGROUND**

On November 12, 2021, Plaintiffs originally filed this action against Defendants State Auto and Hamza Daghamin related to fire damage on Plaintiffs' property. Doc. [1] ¶ 1. Plaintiffs alleged negligence against Daghamin and defamation and vexatious refusal to pay insurance claims against State Auto. *Id.*

This is State Auto's second attempt at removing this action to federal court. *See H&B Ventures, LLC v. State Auto Property and Casualty Ins. Co.*, 4:21-cv-01385-JCH, 2022 WL

392239, at *5 (E.D. Mo. Feb. 9, 2022).  Previously, State Auto argued Plaintiffs fraudulently joined Daghamin to defeat diversity jurisdiction and urged the Court to disregard Daghamin's non-diverse citizenship and retain jurisdiction over the case.[1]  *Id.* at *2.  The Court declined to do so and remanded the action to state court in February 2022.  *Id.* at *5.

Upon remand, the case proceeded in state court for nearly a year, during which time Daghamin propounded two sets of discovery on Plaintiffs, Doc. [24] at 4, filed a Motion for Summary Judgment, Doc. [1-6], and filed a Motion for Leave to File a Counterclaim for Abuse of Process against Plaintiffs, Doc. [1-5].  Plaintiffs timely responded to that discovery and, rather than oppose the motions, elected to voluntarily dismiss Daghamin without prejudice on March 24, 2023.  *Id.*

On April 7, 2023, State Auto filed its second Notice of Removal, arguing the Court now has jurisdiction because complete diversity exists between the remaining parties.  Doc. [1] ¶ 4.  Although State Auto filed its Notice more than one year after Plaintiffs commenced the action, it asserts removal is timely under 28 U.S.C. § 1446(c)(1) because "Plaintiffs acted in bad faith in order to prevent State Auto from removing the action."  *Id.* ¶ 14.  Plaintiffs deny acting in bad faith and argue that the Court must grant their Motion to Remand[2] because State Auto's Notice of Removal is untimely.  Doc. [24] at 5.  Plaintiffs also request the Court award attorney fees and costs associated with opposing the removal.  *Id.* at 6–7.

---

[1] Both Plaintiffs are citizens of Missouri and Defendant State Auto is an Iowa corporation with its principal place of business in Ohio.  Defendant Daghamin, a Missouri citizen, is the sole non-diverse defendant.

[2] The Court of Appeals for the Eighth Circuit has not decided whether the one-year time limitation is jurisdictional or procedural.  *See Vasseur v. Douglas*, 930 F.3d 994, 996 (8th Cir. 2019).  Other courts have found the one-year time limitation to be procedural.  *See, e.g.*, *Sizemore v. Auto-Owners Ins. Co.*, 457 F. Supp. 3d 585, 588 (E.D. Ky. 2020).  This Court need not decide the issue here because, even though Plaintiffs moved to remand this case thirty-four days after State Auto filed its Notice of Removal, Defendants have not argued that Plaintiffs waived procedural defects.  *See* 28 U.S.C. § 1447(c).

## II.   LEGAL STANDARD

Removal is permitted in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  A federal court has original jurisdiction under 28 U.S.C. § 1332(a)(1) over civil actions where there is complete diversity—that is, "where no defendant holds citizenship in the same state where any plaintiff holds citizenship."  *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010).  A case may become removable in the course of litigation, 28 U.S.C. § 1446(b)(3), but a case cannot be removed to federal court based on diversity of citizenship "more than one year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action," 28 U.S.C. § 1446(c).  The removing party—here, State Auto—bears the burden of establishing jurisdiction, *Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011), and federal courts must "resolve all doubts about federal jurisdiction in favor of remand," *Dahl v. R.J. Reynolds Tobacco, Co.*, 478 F.3d 965, 968 (8th Cir. 2007).

## III.   DISCUSSION

### A.  State Auto's removal is not timely

It is undisputed State Auto filed its Notice of Removal more than one year after Plaintiffs commenced the action.  Accordingly, the Court must grant Plaintiffs' Motion to Remand unless the Court finds Plaintiffs acted in "bad faith" in order to prevent removal.  28 U.S.C. 1446(c)(1). The Court does not find that State Auto met its burden to prove bad faith here.

#### 1.  The Bad-Faith Standard

The Court of Appeals for the Eighth Circuit has not yet announced a standard for the bad-faith exception under § 1446(c)(1).  *Jackson v. C.R. Bard*, *Inc.*, 4:17-cv-974-CEJ, 2017 WL

2021087, at *2 (E.D. Mo. May 12, 2017) (citing *Trokey v. Great Plains Roofing & Sheet Metal, Inc.*, 4:16-cv-01193-ODS, 2017 WL 722607, at *1 (W.D. Mo. Feb. 23, 2017)).  As a result, district courts within the Eighth Circuit have applied various standards to determine whether a plaintiff has acted in bad faith for purposes of § 1446(c)(1).  *Compare RJO Invs., Inc. v. Crown Financial, LLC*, 5:18-cv-05015-TLB, 2018 WL 2050165, at *7 (W.D. Ark. May 2, 2018) (remanding where defendant failed to put forth "any evidence of intentional conduct by [p]laintiffs designed solely to defeat diversity jurisdiction"), *with Frisch v. Shanghai Huayi Group Corp. Ltd.*, 1:23-cv-15-CJW, 2023 WL 3480905, at *4–5 (N.D. Iowa May 16, 2023) (holding bad faith requires strategic conduct intended, at least in part, to deny the defendant the opportunity to remove the case to federal court), *and Bristol v. Ford Motor Co.*, 4:16-cv-01649-JAR, 2016 WL 6277198, at *4 (E.D. Mo. Oct. 27, 2016) (applying the two-step *Aguayo* framework).

State Auto urges the Court to apply the two-part *Aguayo* test from the District of New Mexico.[3]  *See Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014).  The *Aguayo* framework first asks whether the plaintiff actively litigated against the non-diverse defendant. *Id.* at 1262.  Failure to do so constitutes *per se* bad faith.  *Id.*  If the plaintiff actively litigated against the non-diverse defendant, he or she is "entitled to a rebuttable presumption of good faith," which the defendant may rebut with direct evidence of bad faith.  *Id.* at 1275.

---

[3] Although not required by binding authority, courts in this District have applied the *Aguayo* framework in five prior cases, each one resulting in remand.  *See SAAC Invs., LLC v. Secura Ins.*, 4:22-cv-01174-NCC, 2023 WL 1070353, at *3 (E.D. Mo. Jan. 27, 2023) (Collins, Mag. J.) (applying the standard because both parties agreed on it); *Thompson v. Gen. Motors LLC*, 4:21-cv-00183-SEP, 2021 WL 3186587, at *3 (E.D. Mo. July 28, 2021) (Pitlyk, J.) ("Though it is not required by any binding authority, this Court has previously adopted the *Aguayo* framework and will likewise apply it here."); *E.H.S. by N. v. BNSF Ry. Co.*, 1:19-cv-00141-JAR, 2019 WL 3934472, at *2–3 (E.D. Mo. Aug. 20, 2019) (Ross, J.) ("This Court has previously held that the framework set forth in [*Aguayo*] is persuasive."); *Jackson v. Bayer Healthcare Pharms., Inc.*, 4:17-cv-01413-JAR, 2017 WL 2691413, at *5 (E.D. Mo. June 22, 2017) (Ross, J.); *Bristol v. Ford Motor Co.*, 4:16-cv-01649-JAR, 2016 WL 6277198, at *3–4 (E.D. Mo. Oct. 27, 2016) (Ross, J.).

The Court does not find the *Aguayo* standard persuasive and declines to apply it.  At the outset, the test is not widely used.  No Courts of Appeals have considered the bad-faith exception has adopted the *Aguayo* framework.[4]  *See Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 292–93 (5th Cir. 2019) (weighing four distinct factors to determine bad faith); *Chavez v. Time Warner Cable, LLC*, 728 F. App'x 645, 647 (9th Cir. 2018) (finding the district court "did not clearly err" in finding bad-faith under 1446(c) based on plaintiff's deliberate conduct); *Dutchmaid Logistics, Inc. v. Navistar, Inc.*, 2:16-cv-857-EPD, 2017 WL 1324610, at *3 (S.D. Ohio April 11, 2017) (explaining "the Sixth [Circuit] has ruled on cases regarding the bad faith exception after *Aguayo* was decided, and has not relied on this test").  Other district courts have expressly refused to adopt the test.  *See, e.g.*, *Hopkins v. Nationwide Agribusiness Ins. Co.*, 4:18-cv-00315-KOB, 2018 WL 3428610, at *3–4 (N.D. Ala. July 16, 2018); *Frisch*, 2023 WL 3480905, at *5; *Dutchmaid*, 2017 WL 1324610, at *3.

Courts consistently reject *Aguayo* based on the framework's unintended consequences and structural flaws.  As to consequences, by placing a premium on active litigation, the *Aguayo* framework has the potential to incentivize bad faith conduct, a concern even expressed by the *Aguayo* court itself.  *See Aguayo*, 59 F. Supp. 3d at 1274 ("[a] plaintiff can actively litigate against a removal spoiler even though the plaintiff is keeping the spoiler in the case for forum manipulation purposes . . . [so,] the bad faith exception incentivizes its own satisfaction, and plaintiffs will be able to defeat removal under the exception by jumping through the hoops of actively litigating the action in state court.").  In other words, because the *Aguayo* framework creates a bright-line rule in which a failure to litigate automatically constitutes bad faith, the test paradoxically incentivizes bad-faith behavior to achieve the test's good-faith presumption.  For

---

[4] The Court does acknowledge that since Congress's amendment in 2011 adding the "bad faith" exception in § 1446(c)(1), few Courts of Appeals have interpreted the bad faith exception.

example, the *Aguayo* test may "deter plaintiffs from dismissing defendants they realize are not necessary, as well as request meaningless discovery to avoid the exception being exercised." *Dutchmaid*, 2017 WL 1324610, at *3.  So, under *Aguayo*, a plaintiff who has named a non-diverse defendant in bad faith can both side-step the statutory exception and enjoy a good-faith presumption by propounding discovery on the defendant or opposing his or her attempts at dismissal, all with a bad-faith motive.  This creates an additional knock-on effect: an increased cost and complexity of litigation.  *Dutchmaid*, 2017 WL 1324610, at *3.

Unintended consequences aside, several courts also find the *Aguayo* framework inapposite to the plain language of the statute.  As discussed above, § 1446(c)(1) permits removal beyond the one-year mark if a plaintiff "acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. 1446(c)(1).  Courts consistently interpret this language to mean that, in order for the exception to apply, a plaintiff must engage in conduct with an *intent* to prevent removal.  *See Sloss v. Tyson Fresh Meats*, 4:18-cv-00286-RGE, 2018 WL 9815609, at *2–3 (S.D. Iowa Dec. 17, 2018) (collecting cases).  This interpretation gains further support from the one example of bad faith enumerated in the statute, which requires that a plaintiff "deliberately" act "to prevent removal."[5]  28 U.S.C. § 1446(c)(B)(3).  But, because *Aguayo*'s first prong establishes that a "failure to litigate" constitutes *per se* bad faith, a court following *Aguayo* could find that a plaintiff acted in bad faith without inquiring into his or her intent at all.  *See Hopkins*, 2018 WL 3428610, at *4 (noting the intentionality required by § 1446(c) and "declin[ing] . . . to adopt *Aguayo*'s 'actively litigated' test").  Indeed, in some contexts, a plaintiff's failure to litigate does not signify an intent to defeat removal.  *See, e.g.*, *Becker v. Ford Motor Co.*, 1:20-cv-281-TAV, 2021 WL 4221618, at *3, 7 (E.D. Tenn. Sept. 15,

---

[5] The statute provides one example of "bad faith," as meant in Section 1446(c), where "the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal."  28 U.S.C. 1446(c)(3)(B).

2021) (declining to adopt *Aguayo* and finding that, because of plaintiffs' state-law right to add a non-diverse defendant solely to combat an empty-chair defense, "plaintiffs had no obligation to actively litigate against [the non-diverse defendant]").

The Court is persuaded by other courts' analysis that determines whether a defendant can prove a plaintiff's bad faith under § 1446(c)(1) through a variety of factors and circumstances, citing both direct and circumstantial evidence. *See, e.g.*, *Hoyt*, 927 F.3d at 292–93 (affirming a bad-faith finding by considering factors such as (1) the timing of a non-diverse defendant's dismissal, (2) whether plaintiff actively pursued his claim against the defendant, (3) plaintiff's knowledge that his claim against the non-diverse defendant was no longer supported by evidence, and (4) whether plaintiff received consideration for dismissing the defendant); *see also Kalfsbeek Charter v. FCA US, LLC*, 540 F. Supp. 3d 939, 943–45 (C.D. Cal. 2021) (finding no bad faith after considering plaintiff's active litigation of its claims, when the plaintiff named the defendant, the plaintiff's basis for bringing the relevant claims, and whether there was a viable and consistent explanation for dismissing the defendant); *GeoSierra Env't, Inc. v. Nautilus Ins. Co., Inc.*, 2:22-cv-00505-TL, 2023 WL 2632515, at *3–6 (W.D. Wash. Mar. 24, 2023) (listing active litigation as one of four factors); *Sloss*, 2018 WL 9815609, at *4–5 (remanding where plaintiff brought colorable claims, did not delay the action, and had a plausible explanation for dismissing the non-diverse defendants even though it conditioned the dismissal on the foreign defendant's agreement that it would not pursue removal); *Frisch*, 2023 WL 3480905, at *5 (holding plaintiffs did not act in "bad faith" where they brought colorable claims, "did not delay or intentionally employ removal-defeat strategies . . . conducted sufficient discovery" and dismissed the defendants "almost three years after filing the lawsuit"). Thus, rather than a

bright-line indicator of bad faith, a plaintiff's failure to litigate is more properly construed as one potential factor among many.

### 2. State Auto has not shown Plaintiffs acted in "bad faith"

State Auto argues Plaintiffs named Daghamin as a defendant solely to defeat diversity jurisdiction and, as evidence of their bad faith, Plaintiffs failed to litigate against Daghamin before voluntarily dismissing him months after the one-year removal deadline and days before a state-court hearing on Daghamin's Motion for Leave to File a Counterclaim for Abuse of Process.[6]   Plaintiffs deny acting in bad faith and assert that their negligence claim against Daghamin arose out of a "reasonable and good faith belief that Daghamin breached legal duties to Plaintiffs" and explain they chose to dismiss Daghamin after receiving his Motion for Summary Judgment, reviewing the affidavits attached in support, and deeming it unnecessary to respond.  Doc. [24] at 4.  The Court has *deja vu* from the parties' arguments.  *See H&B Ventures*, 2022 WL 392239, at *1–5.

As a reminder, State Auto first attempted to remove this action to federal court by arguing Plaintiffs fraudulently joined and/or fraudulently misjoined Daghamin in an effort to defeat diversity jurisdiction.  *H&B Ventures*, 2022 WL 392239.  Now, on its second attempt at removal, State Auto essentially repackages this argument, but with a different bow, this time arguing Plaintiffs acted in "bad faith."

Prior to this Motion, the Court had concluded Plaintiffs stated a colorable claim against Daghamin and that claims against Daghamin were not "sham."  *See H&B Ventures*, 2022 WL 392239, at *3–5.  The action then returned to state court where Daghamin engaged in discovery and motion practice in an effort to get dismissed from the case.  Plaintiffs represent, and State

---

[6] State Auto also argues Plaintiffs failed to undertake other conduct that constitutes "active litigation" under the *Aguayo* framework.  *See* Doc. [15] at 4–5.  But, as the Court explained in Section (III)(A)(1) of this Memorandum and Order, active litigation is just one of many factors pertinent to the "bad faith" analysis.

Auto does not dispute, that Plaintiffs dismissed Daghamin at or about the time when Plaintiffs realized their claim against Daghamin should not continue.  Really, that should end the Court's "bad faith" inquiry right there.  *Cf. Roberson*, 2021 WL 2179265, at *4 (finding no bad faith where defendant did not dispute plaintiff first discovered his diversity-spoiling claim lacked merit until after the removal deadline); *Dutchmaid*, 2017 WL 1324610, at *3 (hesitating to construe the bad-faith exception in such a way that would "deter plaintiffs from dismissing defendants they realize are not necessary").

Remarkably, though, here, it did not.  State Auto attempts to use Daghamin's motions as evidence of Plaintiffs' bad faith, without discussing the merits of the motions or the evidence cited in those motions.[7]  The Court declines to find that, based on their mere presence, the contentions asserted in those motions are true or, without more, that they demonstrate bad faith.  Instead, the Court views State Auto's mere reliance on these motions as "evidence of bad faith" as an attempt to regurgitate arguments it previously made, and the Court rejected.  *See H&B Ventures*, 2022 WL 392239, *2–5.

It is clear State Auto was "banking" on the Court's acceptance of the *Aguayo* standard, meaning, that it hoped the Court would overlook everything else in this case and find that Plaintiffs' lack of discovery is conclusive evidence of bad faith.  But State Auto's conduct is exactly why the Court finds the *Aguayo* standard unpersuasive.  This would incentivize removing

---

[7] In its Opposition, State Auto references Daghamin's Motion for Leave to File a Counterclaim and summarizes his assertions in a single sentence: "[Daghamin] set forth that Plaintiffs' discovery responses established that they knew there was no basis for their claim against him, that the allegations were false, and that they lacked legal support." Doc. [15] at 6.  State Auto likewise summarizes Daghamin's Motion for Summary Judgment, which "assert[s] that [Daghamin] owed no duties to Plaintiffs, and was not in possession or control and had not agreed to be responsible for the maintenance, safety, or security . . . of the subject property." *Id.*  State Auto argues the counterclaim and summary judgement motion indicate bad faith "when the timing of the voluntary dismissal is considered" and does not discuss the merits of the motions or the evidence cited in Daghamin's Motion for Summary Judgment. *Id.*

defendants to sit on their hands through the one-year deadline and then (ironically) argue bad faith on the part of the plaintiff for failure to litigate.  That is what State Auto did here.[8]

On the other end of the spectrum, the Court also does not wish to incentivize plaintiffs to idly sit by in state court and wait for the one-year deadline to expire.  But, that is not a worry here.  Upon the first remand, Plaintiffs promptly responded to Daghamin's discovery, engaged in motion practice, and based upon the discovery and motions, Plaintiffs discovered their claim against  Daghamin lacked merit.  Truly, that is the beauty of discovery.  *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014) ("discovery is a investigatory tool intended to help litigants gain an understanding of the key persons.").  Even though Plaintiffs reached their decision to dismiss Daghamin through affidavits submitted in motion practice rather than, for example, Plaintiffs' own factfinding, the Court does not find this shows Plaintiffs kept Daghamin in the case beyond the one-year mark in bad faith.  Given these facts, the timing of the voluntary dismissal does not render Plaintiffs' explanation for dismissal implausible and without more, the Court declines to second-guess Plaintiffs' litigation strategies and infer bad faith.

For the reasons discussed, the Court concludes State Auto failed to meet its burden in showing that the bad-faith exception under § 1446(c)(1) applies.  Because State Auto filed its Notice of Removal after the one-year deadline passed, removal was untimely.  Therefore, the Court remands this action to state court.

---

[8] The Court notes that, except for Daghamin, no other party in this case engaged in discovery, *including State Auto*. Notably, it appears State Auto, for its part, did not take any discovery to pursue its *own counterclaim* against Plaintiffs or affirmative defenses.  *Cf. GeoSierra Env't, Inc. v. Nautilus Ins. Co., Inc.*, 2:22-cv-00505-TL, 2023 WL 2632515, at *5 & n.7 (W.D. Wash. Mar. 24, 2023) (declining to find bad faith based on a plaintiff's failure to serve any discovery on the non-diverse defendant where both the plaintiff and diverse-defendant did not take discovery); *see also Somera Cap. Mgmt., LLC v. Twin City Fire Ins. Co.*, 2:20-cv-4277-DMG, 2020 WL 3497400, at *3 (C.D. Cal. June 29, 2020) (finding lack of discovery did not indicate bad faith where plaintiff elected not to serve discovery on either defendant).

**B.  Attorney's Fees and Costs**

Plaintiffs also request that the Court award attorney's fees and costs for the effort they expended opposing State Auto's removal.  Doc. [13] at 6–7.  "[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  The Court does not find the imposition of fees warranted here only because, as discussed above, the law regarding the bad-faith exception is unsettled in this circuit, thus, it was not objectively unreasonable for State Auto to seek removal and argue bad faith under the *Aguayo* standard.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand, Doc. [13], is **GRANTED** in part and **DENIED** in part consistent with this Memorandum and Order.  A separate Order of Remand will accompany this Memorandum and Order.

Dated this 9th day of August 2023.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

- 11 -